**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**OFFICE OF SPECIAL MASTERS**
**No. 24-662V**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| | \* | |
| JESSICA MASSIE, | \* | Chief Special Master Corcoran |
| | \* | |
| Petitioner, | \* | Filed: January 20, 2026 |
| | \* | |
| v. | \* | |
| | \* | |
| SECRETARY OF HEALTH AND | \* | |
| HUMAN SERVICES | \* | |
| | \* | |
| Respondent. | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Brynna Gang*, Kraus Law Group, LLC, Chicago, IL, for Petitioner.

*Rachelle Bishop*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION GRANTING IN PART**
**INTERIM AWARD OF ATTORNEY'S FEES AND COSTS**[1]

On April 26, 2024, Jessica Massie filed this Petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] ECF No. 1 ("Pet."). Petitioner alleges that a Tdap vaccine she received caused her to suffer a "demyelinating neurological injury" that may be properly understood to be multiple sclerosis. Pet. at 1. Resolution of the claim remains pending.

Even though this matter is less than two years old, Petitioner has already filed *two* motions for interim awards of attorney's fees and costs – although both were occasioned by the withdrawal of her prior counsel. Petitioner's first motion for an interim award was due to her initial counsel's withdrawal, and sought a total of $30,616.01 (comprised of $28,443.50 in fees, plus $2,172.51 in costs) for the work performed on the claim through January 2025. Motion, dated Jan. 3, 2025 (ECF

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

No. 23) ("First Interim Fee Mot."). The second interim fees request was filed after the attorney who subsequently appeared in this matter (in February 2025) *also* withdrew (barely five months later, in July). Motion, dated July 1, 2025 (ECF No. 33) ("Second Interim Fee Mot."). That motion requests $30,816.50 (made up of $27,288.40 in attorney's fees and $3,528.10 in costs) for fees and costs incurred in that brief interval. *Id.* at 9. In total, Petitioner requests **$61,432.51** ($55,731.90 in attorney's fees and $5,700.61 in costs).

Respondent reacted to each fee request at the time filed. *See* First Response, dated Jan. 17, 2025, (ECF No. 26); Second Response, dated July 14, 2025, (ECF No. 36). Respondent challenged whether the circumstances of counsel withdrawing are appropriate to award interim fees, but defers to my discretion as to whether Petitioner has met the legal and statutory requirements for an interim fees and costs award, as well as the calculation of the amount to be awarded. *See* ECF No. 26 at 2; ECF No. 36 at 2.

I am resolving both pending interim requests in this single decision, for efficiency's sake. I hereby grant Petitioner's motions in part, awarding fees and costs in the total amount of **$49,867.43.**

## ANALYSIS

## I.    Petitioner's Claim has Reasonable Basis

Although the Vaccine Act only guarantees a fees award to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, establishing reasonable basis does not automatically entitle an unsuccessful claimant to fees, but is instead a threshold obligation; fees can still thereafter be limited, if unreasonable, or even denied entirely. The act of an attorney's withdrawal from a case is often deemed an appropriate circumstance for paying fees—although because the case is still pending, a claimant must make the good faith/reasonable basis showing relevant to unsuccessful claims.

A claim's reasonable basis is demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the claim—counsel's conduct is irrelevant (although it may bulwark good faith). Simmons, 875 F.3d at 635. Reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about

2

the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation).

The standard for reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).

Also, relevant herein are the standards governing interim awards—meaning fees awards issued while a case is still pending. *See generally Auch v. Sec'y of Health & Hum. Servs.*, No. 12-673V, 2016 WL 3944701, at *6–9 (Fed. Cl. Spec. Mstr. May 20, 2016); *Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *5–9 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). It is well-established that a decision on entitlement is not required before fees or costs may be awarded. *Fester v. Sec'y of Health & Hum. Servs.*, No. 10-243V, 2013 WL 5367670, at *8 (Fed. Cl. Spec. Mstr. Aug. 27, 2013); *see also Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). Interim award requests are subject to the same reasonable basis inquiry applied to unsuccessful but completed matters, since in the context of an interim request the claim literally is not yet been found to be "successful."

There is no presumption of entitlement to interim awards, but special masters may in their discretion permit such awards, and often do so. *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). Requests for interim costs are subject to the same standards governing fees. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Fester*, 2013 WL 5367670, at *16. However, there must be some showing that a petitioner's circumstances render an interim award just. Criteria that I have found to be important in determining whether an interim award should be permitted include: 1) whether the amount of fees requested exceeds $30,000; 2) where expert costs are requested, if the aggregate amount is more than $15,000; and/or 3) whether the case has been pending for more than 18 months. *See Knorr v. Sec'y of Health & Hum. Servs.*, No. 15-1169V, 2017 WL 2461375 (Fed. Cl. Spec. Mstr. Apr. 17, 2017).

Petitioner has made a sufficient showing of reasonable basis to justify an interim award. While the ultimate resolution of causation remains to be determined, Petitioner has put forward enough objective support for the claim at the present time (despite the fact that I have generally expressed skepticism in prior decisions alleging multiple sclerosis as a vaccine injury). In addition, I find an interim award is appropriate in this case—albeit almost wholly in light of withdrawal of the two different attorneys. And no other circumstances exist that make an interim award inappropriate in this matter.

## II.    Calculation of Fees

Only "reasonable" fees or costs may be awarded in the Program. Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensely*, 461 U.S. at 429–37.

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis*" exception). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

*Rates for Initial Counsel (First Interim Fees Request)*

Petitioner's First Motion requests the following rates for her various attorneys, based on the years work was performed:

|  | **2024** |
|---|---|
| **Andrew Downing (Attorney)** | $485 |
| **Ann Allison (Attorney)** | $435 |

4

| Courtney Jorgenson (Attorney) | $375 |
|---|---|
| Alex Malvick (Paralegal) | $175 |
| Danielle Avery (Paralegal) | $175 |
| Samantha Perez (Paralegal) | $175 |

First Interim Fees Mot. at 33.

Mr. Downing, Ms. Jorgenson, and Ms. Allison practice in Phoenix, Arizona—a jurisdiction that has been deemed "in forum," and thus entitling them to commensurate rates established in *McCulloch. See Rich v. Sec'y of Health & Hum. Servs.*, No. 12-742V, 2017 WL 1435879 (Fed. Cl. Spec. Mstr. Mar. 28, 2017). The hourly rates requested for the attorneys and their associated paralegals for time billed in 2024 are reasonable and consistent with our prior determinations and will therefore be adopted herein. *Cracraft v. Sec'y of Health & Hum. Servs.*, No. 20-0562V, 2024 WL 2992939 (Fed. Cl. Spec. Mstr. May 9, 2024). And the amount of work performed on the matter –initiation of the claim, through counsel's withdrawal—was reasonable.

*Rates for Subsequent Counsel (Second Interim Fees Request)*

Petitioner's Second Motion requests the following rates for her various attorneys, based on the years work was performed:

|  | 2025 |
|---|---|
| John Beaulieu (Attorney) | $360 |
| Allison Haskins (Attorney) | $525 |
| Ramon Rodriguez, III (Attorney) | $563 |
| Joel Hazard (Paralegal) | $195 |
| Nicole Dernelle-Ruhlow (Paralegal) | $210 |
| Melissa Vraspir (Paralegal) | $195 |

| | |
|---|---|
| **Ashton Wright (Paralegal)** | $195 |

Second Interim Fees Mot. at 9.

Ramon Rodriguez, III is an attorney at Siri & Glimstad. While the firm is headquartered in New York, Mr. Rodriguez practices out of Richmond, VA—a city not deemed "in forum." However, Mr. Rodriguez has previously received forum rates. *See, e.g., Chynoweth v. Sec'y of Health & Hum. Servs.,* No. 13-721V, 2017 WL 6892900, at *2 (Fed. Cl. Spec. Mstr. Oct. 30, 2017); *Musto v. Sec'y of Health & Human Servs.*, No. 11–801V, 2017 WL 1150797 (Fed. Cl. Spec. Mstr. Mar. 2, 2017); *Zdroik v. Sec'y of Health & Human Servs.*, No. 15–468V, 2017 WL 767852, at *2 (Fed. Cl. Spec. Mstr. Feb. 3, 2017). Ms. Haskins has also been found entitled to forum rates. *See Dezern v. Sec'y of Health & Hum. Servs.*, No. 13-643V, 2016 WL 6678496 (Fed. Cl. Spec. Mstr. Oct. 14, 2016). Mr. Beaulieu practices in Louisville, Kentucky—which is not considered "in forum." *Dougherty v. Sec'y of Health & Hum. Servs.*, No. 05-700V, 2011 WL 5357816, at *6 (Fed. Cl. Spec. Mstr. Oct. 14, 2011) (citing *Rubert ex rel. Rupert v. Sec'y of Health & Hum. Servs.*, 52 Fed. Cl. 684, 688-89 (2002)). However, multiple attorneys that do practice in Louisville, Kentucky have been afforded "in forum" rates, and Mr. Beaulieu's is comparable. *See Atkins v. Sec'y of Health & Hum. Servs.*, No. 20-333-V, 2025 WL 2643680, at *1 (Fed. Cl. Spec. Mstr. Aug. 13, 2025); *Stewart v. Sec'y of Health & Hum. Servs.*, No. 20-19V, 2025 WL 2403275, at *2 (Fed. Cl. Spec. Mstr. July 17, 2025) (both cases awarding Timothy McCarthy an hourly rate of $375 an hour for work performed during the years 2019–25).

The hourly rates for almost all of the attorneys and their associated paralegals for time billed in 2025 are reasonable and consistent with prior determinations, and will therefore be adopted herein. *Holt v. Sec'y of Health & Hum. Servs.,* No. 23-2044V, 2025 WL 4033856, at *2 (Fed. Cl. Spec. Mstr. Dec. 11, 2025). But I will not utilize the 2025 rate sought for Mr. Rodriguez's work. That rate exceeds what he very recently was awarded for work performed in this same timeframe (although it falls within the OSM rate schedule range).[3] *Coriale v. Sec'y of Health & Hum. Servs.*, No. 24-0328V, Slip. Op. at 2 (Fed. Cl. Spec. Mstr. Jan. 16, 2026) (approving an hourly rate of $547.00 for Mr. Rodriguez for work performed in 2025). Therefore, Mr. Rodriguez will receive $547 per hour for 2025 work, reducing the fees to be awarded for the work Siri & Glimstad performed on this matter by $540.80.[4]

---

[3] The 2025 Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedule for 2025 sets a range of $511 to $606 an hour for attorneys with twenty to thirty years of practice experience. https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules (last visited Jan. 15, 2026).

[4] Calculated by: ($563 – $547) x 33.8 hours = $540.80

*Reasonableness of Siri & Glimstad Work on Matter in 2025*

In addition, a reduction in the amount of fees to be awarded is appropriate, due to more work being performed on this matter than reasonable. The attorneys at Siri & Glimstad appeared as counsel in this matter for *less than six months*, and yet managed to devote roughly seventy hours of their time, running up fees equivalent to the attorneys who first worked on the matter and helped prepare it for filing. *See* Clerk's Notice, dated Jan. 7, 2025; Clerk's Notice, dated July 3, 2025; Second Interim Fee Mot. at 9. Such an amount of time is facially unreasonable, and also not justified by what counsel actually accomplished. The filings pertinent to furthering Petitioner's claim during these six months consisted of a notice of intent to remain in the Program, one filing of supplemental medical records, an updated exhibit list, and two motions for extensions of time. *See* Docket Entries dated Jan. 9, 2025; Feb. 27, 2025; Mar. 18, 2025; Apr. 29, 2025. Prior counsel, in comparison, handled the "heavy lifting" every new case requires. By the time the attorneys at Siri & Glimstad were retained, prior counsel had already prepared and filed the Petition, PAR Medical History Questionnaire, and Petitioner's statement of completion, gathering and submitting the majority of Petitioner's medical records needed for these items, and took care of other miscellaneous filings. *See* Docket Entries dated Apr. 26, 2024 – Jan. 3, 2025.

Mr. Rodriguez and his colleagues' time records also show an excessive amount of time devoted to certain tasks. Siri & Glimstad attorneys spent over 12.5 hours researching and contacting potential experts, and about 19.7 hours handling their appearance and subsequent withdrawal. *See generally* Ex. 31 (ECF No. 33-3) at 1–19. Alone, the time devoted to transitioning onto, then off of, case amounted to roughly 28% of their total time billed to the matter.[5] Mr. Rodriguez himself billed a total of 33.8 hours on this matter. *Id.* at 19. Of those hours, Mr. Rodriguez spent roughly 12 hours trying to find an expert witness.[6] It is excessive to spend that amount of time contacting experts who have not been retained on the matter without extenuating circumstances.

Given the foregoing, and consistent with the discretion afforded special masters to make reasonable across-the-board reductions in time (so as to not become "green eyeshade accountants" in reviewing fees applications – especially interim requests), I find a 30% reduction for Siri & Glimstad's requested fees appropriate. The application of this cut results in a reduction of **$8,024.28.**[7]

---

[5] Calculated by: (19.7 hours / 70.5 hours) x 100 = 27.94%. Mr. Rodriguez spent about 9.4 hours—roughly a third of his billed time on this matter—facilitating his substitution into and withdrawal from the case. *See* Ramon Rodriguez, III, time entries dated: 2/05/2025; 2/06/2025; 2/07/2025; 2/24/2025; 2/27/2025; 6/26/2025; 6/30/2025.

[6] *See* Ramon Rodriguez, III, time entries dated: 2/07/2025; 2/10/2025; 2/14/2025; 2/19/2025; 2/20/2025; 2/21/2025; 2/28/2025; 3/03/2025; 3/07/2025; 3/11/2025; 3/13/2025; 3/14/2025; 3/17/2025; 3/18/2025; 3/19/2025; 3/20/2025; 3/24/2025; 3/28/2025; 4/01/2025; 5/15/2025.

[7] Calculated by: ($27,288.40 – $540.80) x (30% ÷ 100) = $8,024.28

## III.    Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault*, 52 Fed. Cl. at 670; *Perreira*, 27 Fed. Cl. at 34. Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester,* 2013 WL 5367670, at *16. When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

### *Costs Incurred by Initial Counsel*

Petitioner seeks $5,700.61 in outstanding costs in total, for the work of both withdrawing sets of attorneys. The outstanding costs sought in the first motion for an interim award of $2,172.51 are made up of medical record retrieval costs, mailing costs, expert costs, and filing fees. Ex. A (ECF No. 23-1) at 15–58; Ex. 30 (ECF No. 33-1) at 1–9. Petitioner has provided supporting documentation for all costs accrued by Mr. Downing and his firm. *See* Ex. A (ECF No. 23-1) at 15–58. These costs are typical in Program cases and were reasonably incurred in this matter, so I shall grant those costs in full.

### *Costs Incurred by Second Set of Counsel*

The $3,528.10 in costs accrued by Mr. Rodriguez and Siri & Glimstad consist of medical record retrieval costs, mailing costs, and an expert retainer. Ex. 30 (ECF No. 33-1) at 1–9. While there was supporting documentation for most of the costs, no receipt has been filed for the $3,000.00 retainer for Dr. Rasha Waheed—only an email exchange where she stated her retainer price before Mr. Rodriguez and Dr. Waheed even had a meeting. *See id.* at 7. There is no indication that Dr. Waheed was retained, and there is no expert report from her filed in this case. Therefore, I shall reduce the cost award for Siri & Glimstad by **$3,000.00**.

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of an interim fees award, I **GRANT IN PART** Petitioner's Motion**s** for an Interim Award of Attorney's Fees and Costs. **Petitioner is awarded interim attorneys' fees and costs in the amount total amount of $49,867.43. The award shall be divided, with <u>$30,616.01</u> (reflecting $28,443.50 in fees, and $2,172.51 in costs), to be paid through an ACH deposit to**

8

**Petitioner's former counsel's (Mr. Andrew D. Downing) IOLTA account, and $19,251.42 (reflecting $18,723.32[8] in fees, and $528.10 in costs), to be paid through an ACH deposit to Petitioner's other former counsel's (Mr. Ramon Rodriguez, III) IOLTA account, for prompt disbursement.** In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court SHALL ENTER JUDGMENT in accordance with the terms of this Decision.[9]

        **IT IS SO ORDERED**.

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[8] Calculated by: ($27,288.40 – $540.80) – $8,024.28 = $18,723.32

[9] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.

9